UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KIMBERLY A. MOORE,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )     3:08-CV-161
                                  )     (PHILLIPS/GUYTON)
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
        Defendant.                )

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion For Judgment On The Pleadings [Doc. 11], and the defendant's Motion For Summary Judgment. [Doc. 15]. Plaintiff Kimberly A. Moore seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

## BACKGROUND

Plaintiff was 37 years of age when the ALJ issued his decision (Tr. 82). She is a high school graduate with work experience as a retail clothing store assistant manager and cashier (Tr. 87, 99). She alleges that she has been disabled since January 23, 2003, after sustaining an on the job back injury in November 2002 (Tr. 86, 139).

## MEDICAL RECORD EVIDENCE

The plaintiff is claiming disability based on a back injury and pain associated therewith. Plaintiff alleges disability beginning January 2003. The relevant medical treatment history is summarized as follows:

Plaintiff was seen at Park Med Ambulatory care in November and December 2002 with reported pain subsequent to a workplace injury when moving a large fixture (Tr. 137-44). She was treated for a back strain and released to return to work without restrictions (Tr. 139).

Plaintiff sought emergency room treatment on January 18, 2003, complaining of back pain since the previous afternoon (Tr. 126). She traced the back pain to an injury in November 2002 (Tr. 126). She was given medication and released with instructions to avoid heavy lifting and be off work for two days (Tr. 126).

On January 20, 2003, plaintiff again sought treatment at Park Med Ambulatory Care, stating that she had experienced increased back pain over the previous couple of days (Tr. 135). On examination she had normal reflexes and intact sensation, but reported pain and tenderness in the lower back, buttocks and thighs (Tr. 135). Her medications were adjusted and she was advised to stay off work until she saw an orthopedic specialist (Tr. 135).

Plaintiff saw Dr. Edward Kahn, an orthopedic specialist, on February 24, 2003 (Tr. 160). She reported that it had taken her a month to get to see the orthopedist and she had been off work during that time (Tr. 160). Plaintiff complained of pain in her lower back. Dr. Kahn diagnosed lumbosacral strain and prescribed medications, a heat pad, and continued off-work status (Tr. 161).

Plaintiff received lumbar epidural injections in July 2003, at which time she carried diagnoses of lumbar radiculpathy, degenerative lumbar spondylosis, herniated lumbar disc, lumbar spinal stenosis, and lower limb pain (Tr. 176-78).

Plaintiff participated in physical therapy over the course of several months in 2005, but she perceived no change or variable change in her condition over the course of treatment (Tr. 193-228).

Dr. Joseph Johnson performed a consultative examination of plaintiff in October 2005 (Tr. 234-35). Although the transcription of his report states that Dr. Johnson noted "no back pain for almost three years" (Tr. 234) it is clear from the context that plaintiff reported a three-year history of back pain. Plaintiff reported increased back pain with sitting and standing, ranging in severity from 4 to 9/10 (Tr. 234). On examination plaintiff had limited range of motion, normal reflexes, and near-normal strength (Tr. 235). She could walk on heels and toes and do tandem gait with mildly decreased balance (Tr. 235). Her gait was moderately slow and stiff due to low back pain radiating in the left leg (Tr. 235).

Dr. James Millis reviewed plaintiff's medical records in October 2005 and concluded that she could perform an essentially full range of light work[1] (Tr. 236-43).

Plaintiff saw Dr. Kahn in January 2006 with complaints of severe left leg pain and worsening back pain (Tr. 245). X-rays showed increasing degeneration and collapse at L4-5 (Tr. 245). Dr. Kahn ordered an MRI of plaintiff's lumbar spine (Tr. 245). The MRI showed degenerative spondylosis with asymmetric left-sided disc bulge L4-5 causing mild left-sided

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

3

foraminal stenosis, minor degenerative changes at L5-SI, and small left foraminal disc bulge at L3-4 (Tr. 247). Dr. Kahn diagnosed plaintiff with degenerative herniated disc L4-5 and recommended a diskectomy and fusion at L4-5, with an estimated hospitalization of four to five days and four to six months of post-surgical disability (Tr. 246). Dr. Kahn estimated plaintiff's return to work at three to six months post-surgery (Tr. 276).

Plaintiff underwent decompression and fusion surgery in late April 2006 (Tr. 277, 282-85). She reported daily improvement in May 2006 (Tr. 277). In June 2006, Dr. Kahn noted that plaintiff was doing "markedly better" but continued in off-work status (Tr. 278). In July 2006, plaintiff continued to have leg aches and back pain and stiffness, but she was getting around fairly well and she was released from wearing a back brace (Tr. 279). In August 2006, plaintiff reported back pain and stiffness, but she had no radicular-type symptoms and she walked with a normal gait (Tr. 280). Her complaints appeared to be purely muscular (Tr. 280). In October 2006, plaintiff continued to complain of pain across her lower back but not much leg pain (Tr. 281). She thought physical therapy was helping (Tr. 281). Dr. Kahn felt that a lot of her soreness was from muscle weakness; he continued her off work and in physical therapy (Tr. 281).

In November 2006, Dr. Kahn noted that plaintiff complained of back pain and some parasthesias in her left leg, though they were somewhat improved; most of her complaints were of pain and stiffness in her lower back (Tr. 275). Physical examination showed a well-healed incision, and x-rays appeared to show a consolidating fusion of the bone graft (Tr. 275). She had limited flexion and palpation of her back elicited complaints of pain, but no gross muscle spasm was noted (Tr. 275). Dr. Kahn was not sure why plaintiff was progressing so slowly, and he had no further

options for her other than trying to keep her comfortable (Tr. 275). He discontinued physical therapy but instructed plaintiff to continue performing the exercises at home (Tr. 275). She was on pain medication and muscle relaxants and continued in an off-work status (Tr. 275).

A "Physical Capacities Evaluation Form" was submitted to Dr. Kahn by plaintiff's attorney and completed by Dr. Kahn on December 19, 2006, (approximately one month after the ALJ hearing in this matter). In this form (Tr. 287-89), Dr. Kahn opined that, in an eight-hour day, plaintiff could: sit four hours, one hour at a time, stand one hour, ten minutes at a time; and walk two hours, 15 minutes at a time; that plaintiff could lift up to 10 pounds occasionally; did not require daily bedrest; took medications that could cause side effects such as reduced alertness or concentration; and had problems with stamina and endurance. Dr. Kahn indicated that plaintiff had chronic low back pain. He did not think it was reasonable for plaintiff to work a 40 hour week due to pain, and that she would miss more than three days of work per month due to her condition or treatment of her condition.

## **TESTIMONY EVIDENCE**

At the hearing before the ALJ on November 21, 2006, the plaintiff testified that she was 35 years of age; that she had a driver's license, and that she was able to drive. Plaintiff testified that she had pain in her upper and lower back, legs, and left ankle (Tr. 50). She said that her pain varied in severity from 5 to 8 on a 10-point scale, depending on what she had done and how the weather was (Tr. 52). She used muscle relaxants and pain medication, but these did not provide complete relief of her pain (Tr. 49-50). Her medications occasionally made her drowsy but did not

5

make her sick (Tr. 50). Before she had back surgery, she received physical therapy and epidural steroid shots, but they did not help and caused spasms and hurt (Tr. 54-55). She used a heat cream and lay down a couple of times a day (Tr. 55).

Plaintiff recalled walking 18 minutes at a time on a treadmill (Tr. 50). She testified that she needed to sit and rest after standing for 10 minutes (Tr. 50). She had trouble bending and usually picked things up with her toes instead (Tr. 50). The heaviest things she had lifted since undergoing back surgery were milk and laundry detergent (Tr. 51). She could sit for 10-20 minutes before her back began to hurt (Tr. 51).

Plaintiff said that she had no problems concentrating or remembering things (Tr. 51). She occasionally took Tylenol PM to help her sleep (Tr. 51-52). She was able to dress and bathe herself and she did some simple meal preparation (Tr. 52). She did general housecleaning, but she had to sit down after vacuuming (Tr. 52). She watched television, did laundry with assistance, washed dishes five to ten minutes at a time and went shopping, but she could not stay in a store very long (Tr. 52-54). Plaintiff said she had just got a computer and had just started learning how to use it. Plaintiff testified that she received unemployment benefits from March to June 2004 (Tr. 49).

A vocational expert, Ernest Brewer, also testified that at the hearing (Tr. 55-58). The ALJ posed a hypothetical question to the vocational expert, directing him to assume an individual with plaintiff's vocational characteristics who: could walk, sit, and stand six hours total each in an eight-hour day with normal breaks; could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; and, had mild-to-moderate loss of concentrations with medication (Tr. 56). The vocational expert testified that the hypothetical individual could not do any of plaintiff's past

6

relevant work, but could perform other jobs such as: laundry clerk; counter retail clerk; and hotel night desk clerk (Tr. 57). These jobs could be performed by an individual who required a sit/stand option (Tr. 58). However, the vocational expert said that if plaintiff's testimony were deemed fully credible, she could not do any jobs in significant numbers (Tr. 57).

## DECISION OF THE ALJ

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since January 16, 2003, the alleged onset date of disability.

3. The claimant has the following severe impairment: disorder of back.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 20 pounds on an "occasional" basis and 10 pounds on a "frequent" basis; sit/walk/stand no more than 6 hours, with normal breaks, in an 8 hour work day, with mild to moderate pain and mild to moderate loss of concentration. She has no mental limitations.

7

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual between the ages of 18 and 44 on the alleged onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 16, 2003 through the date of this decision.

(Tr. 15-24).

The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 2-6). Therefore, the ALJ's decision stands as the Commissioner's final decision subject to judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**STANDARD OF REVIEW**

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind

8

might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); and see Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the Court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## ANALYSIS

Plaintiff argues that the ALJ erred in finding that she retained the residual functional capacity to perform a range of light work, because the ALJ did not give "great deference" to the opinion of plaintiff's treating physician, Dr. Kahn. Plaintiff argues that Dr. Kahn's December 19, 2006 "Physical Capacities Evaluation Form" (Tr. 287-89), assessed certain limitations which, if given controlling weight by the ALJ, would have resulted in a finding of disability and the award of benefits. Specifically, the plaintiff cites the Court to Dr. Kahn's assessment that the plaintiff could sit/walk/stand less than 8 hours a day; could lift no more than 10 pounds; could be distracted from work tasks by pain, and that she could be absent from work on a "chronic" basis.

In addition, the plaintiff objects to the ALJ's finding that her statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible (Tr. 21).

9

Case 3:08-cv-00161-TWP-HBG   Document 18   Filed 04/08/09   Page 9 of 12   PageID #: 75

The Commissioner asserts that substantial evidence supports the ALJ's residual functional capacity finding for light work. The Commissioner argues that this finding was consistent with the opinions rendered by the two consulting and reviewing doctors, Dr. Johnson and Dr. Millis, and further, that Dr. Kahn's assessment is generally consistent therewith, although his opinion on disability is exaggerated.

The Court finds that the amount of weight given by the ALJ to the opinion of Dr. Kahn was appropriate. The ALJ may not assign controlling weight to a treating physician's opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997).

The ALJ reasonably noted that, although Dr. Kahn's opinion was not consistent with a full range of light work, it suggested a significant ability to walk, stand, and sit (Tr. 22). Dr. Kahn's opinion conflicted with plaintiff's own reports of her abilities, as he specifically noted that plaintiff did not require bedrest, while plaintiff claimed to need it daily (Tr. 55). On the other hand, plaintiff specifically denied problems with concentration (Tr. 51), while Dr. Kahn indicated that plaintiff has such problems. Thus, plaintiff's testimony and the opinion of her treating physician were in conflict with each other, as well as the opinion of the State Agency reviewing physician, Dr. Millis, who concluded that plaintiff could perform an essentially full range of light work (Tr. 236-43). Moreover, while Dr. Kahn's clinical findings indicated the presence of a back impairment that causes some limitations, his findings did not reasonably evidence debilitating limitations. The ALJ

10

correctly noted that after surgery, in August 2006, Dr. Kahn indicated that plaintiff's complaints appeared to be purely muscular (Tr. 280).

Plaintiff criticizes the ALJ's credibility assessment, but her arguments are insufficient to overcome the significant deference owed an ALJ's credibility finding. See Cruse v. Commissioner of Social Security, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight. . ."). In the present case, as in Cruse, the plaintiff reported that her daily activities included washing dishes, light cooking, and doing laundry. The plaintiff in Cruse could shop and read, and bathe herself. And in Cruse, concentration was alleged to be a problem, but the plaintiff in Cruse, as in the present case, actually reported no problems with concentration.

The ALJ reasonably relied on the vocational expert's testimony to conclude that plaintiff could perform a significant number of jobs, despite the limitations cause by her impairments. Substantial evidence in the record as a whole supports the ALJ's decision that plaintiff was not disabled.

Accordingly, I find that the ALJ properly reviewed and weighed all of the medical source opinions, the objective medical findings, and plaintiff's credibility to determine that she could perform a range of light work. Substantial evidence supports the ALJ's findings and

11

conclusions. Therefore, it is hereby **RECOMMENDED**[2] that the plaintiff's Motion For Judgment On The Pleadings [Doc. 11] be **DENIED** and that the Commissioner's Motion For Summary Judgment [Doc. 15] be **GRANTED**.

                                          Respectfully submitted,

                                              s/ H. Bruce Guyton
                                          United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).